**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**
**CASE NO.** 1:12-CV-190-R
**ELECTRONICALLY FILED**

**BOBBY MOSS**                                                **Plaintiff**

-vs-                          **VERIFIED COMPLAINT AND**
                              **REQUEST FOR JURY TRIAL**

**PENNYRILE RURAL ELECTRIC COOPERATIVE**            **Defendant**

**Registered Agent:**   ESTON W. GLOVER, JR.
                        2000 HARRISON STREET
                        HOPKINSVILLE, KY 42240-0551

** ** ** ** **

### I.      NATURE OF THE ACTION

1.      The Plaintiff, Bobby Moss, (Moss) brings his action for injuries resulting
from the Defendant's discriminatory treatment due to his disability, his having record of
such disability, and the Defendant's perception that he was disabled in violation of
*Title I of the Americans with Disability Act of 1990 (ADA), 42 U.S.C. § 12201 et seq.,* the
*Kentucky Civil Rights Act, KRS 344.010,* et seq., wrongful termination and for
intentional infliction of emotional distress.

### II.     JURISDICTION AND VENUE

2.      Jurisdiction and venue is proper in this district as both the Plaintiff and
Defendant reside in this district.  The Court has pendent jurisdiction over Plaintiff's
state law claims.

3.      The employment practices hereinafter alleged to be unlawful were
committed in the Commonwealth of Kentucky.

### III.   **PARTIES**

4.     The Plaintiff is an individual residing at 8128 Clarksville Road, Russellville, Logan County, Kentucky 42276.

5.     He was employed by the Defendant, Pennyrile Rural Electric Cooperative, beginning at their Russellville Pennyrile warehouse April 30, 1990 until his termination on September 16, 2011.  At all times relevant herein to, Plaintiff was a "employee" of Defendant and such terms defined as the ADA.

6.     At all time relevant hereto, one of the Defendant's office's is physically located at 268 South Main Street, Russellville, Logan County, Kentucky 42276.  The Defendant's principal office is located at P.O. Box 2900, Harrison Street, Hopkinsville, Kentucky 42241.  For most of the time of his employment, the Plaintiff reported to the Russellville office.

7.     On or about December 5, 2011, Moss filed an EEOC complaint alleging violation of the ADA, retaliation and disability.

8.     A Right to Sue was issued by the EEOC on August 22, 2012.

### IV.   **STATEMENT OF FACT**

9.     The Plaintiff began his employment with Pennyrile Rural Electric Cooperative at the Russellville Pennyrile warehouse facility on April 30, 1990 as a warehouseman.

10.     During his twenty-one year tenure, he had been written up for disciplinary reasons on only one occasion prior to being diagnosed with a brain tumor.

11.     Moss's treatment by the Defendant drastically changed after he was diagnosed with a non-malignant brain tumor in August 2008.

12.     For medical reasons Plaintiff had to take sick leave from work for approximately three months.   Plaintiff underwent surgery to remove the tumor on October 15, 2008.  He returned to work on November 26, 2008.  On December 26, 2009, while at home he suffered a grand mal seizure.   Plaintiff returned to work on January 4, 2010.  At that time, for medical reasons, the Plaintiff was unable to operate a vehicle for three months following his seizure.

13.     On March 3, 2010, the Plaintiff, John Walpole and Stephen Allen, were in the Plaintiff's office.  The Plaintiff was in the process of doing a work order in the computer when he made the comment that he assumed a specific amount on the order would possibly be Todd Adler's salary, who is an engineer for Pennyrile.  Both John Walpole and Stephen Allen saw the amount, even though Todd Adler's name was not shown.

14.     On March 5, 2010, Mark Wilkins, the Russellville district manager, picked the Plaintiff up at the warehouse and drove him to the main office in Hopkinsville, Kentucky.   There the Plaintiff met with Eston Glover, the president and CEO of Pennyrile Rural Electric Cooperative and Michelle Small, the human resources director. At that time Plaintiff was reprimanded by Glover and Small for allegedly revealing Adler's work salary, even though the Plaintiff did not know for sure it was his salary. They told him that he would be written up and would be suspended for three days without pay for breaking company policy.  The Plaintiff then requested that his union representative be present to witness the meeting.

15.     The Plaintiff returned to work on March 11, 2010.  Upon his return he was told that he was not allowed in the lineman's quarters and was not allowed to attend safety meetings unless told otherwise.

16.     Also, nobody else was allowed to enter the Plaintiff's office or use his computer except for the Plaintiff.

17.     On March 17, 2010, Glover came to the warehouse to meet with the Plaintiff and Jeff White, who was the foreman at the Russellville warehouse.   The Plaintiff asked for a copy of his write-up.  He did not receive the write-up on the day that it was submitted, even though under the policy he should have been allowed to have it. No union representative was present at this meeting.  On April 12, 2010, the Plaintiff again requested a copy of the write-up, but he still did not receive a copy of it.  On April 16, 2010, the Plaintiff finally got a copy of the write-up, which was left on his desk at the warehouse by an unknown person.

18.     After the May 2010 safety meeting, which the Plaintiff was not allowed to attend, Robin Bybee, the Pennyrile safety director entered the Plaintiff's office to talk to him.   During that conversation Adler entered, uninvited and proceeded to use the Plaintiff's work computer.  The following day the Plaintiff, Mark Wilkins, Jeff White and John Walpole met again and the Plaintiff was told by Mark Wilkins that if he dropped the issue of complaining that Adler had used his computer that no action would be taken against him.  Plaintiff decided to not proceed any further on the matter.

19.     Then, at the same meeting Plaintiff had a conversation with them that he could not release the parking break on the warehouse forklift sometimes because others were readjusting it.

20.     On May 10, 2010, Eston Glover and Michelle Small came to the warehouse and met with the Plaintiff and told him that he was being written up again for complaining about what they called "petty things" and he was to be suspended again for five days, without pay.

21.     Eston Glover in a mocking manner asked the Plaintiff about the forklift break incident and for the Plaintiff to show him how he was having difficulty setting it. At the same time Mark Venable, a lineman, came and sat in the seat of the forklift just to socialize.  Eston Glover was adjusting the breaks saying "see I can do it" meaning he could do it so why was the Plaintiff having such an issue?  The Plaintiff explained to him that since his brain surgery he wasn't as strong as he use to be and turned to walk back to his office.  Glover then told the Plaintiff that if he complained anymore or if he proceeded any further in these matters, he would be terminated from his job with Pennyrile.

22.     Glover became very upset with the Plaintiff because he had not signed the write-up.  The Plaintiff told Glover that he was still thinking about it since he had been told that he wouldn't be written up if he dropped the previous complaint against Adler regarding him entering the Plaintiff's office and using the Plaintiff's computer.

23.     The Plaintiff was retaliated against, mocked and harassed in regard to his inability to physically release the forklift break.  The parking break was left to be so tight that Plaintiff could not release it due to his decreased strength from his illness, but further because it was being tightened to require far more strength.

24.     On May 11, 2010, the Plaintiff could not release the break and no one else was at the warehouse at the time.  Plaintiff called Mark Wilkins at the office and he was not in.  The Plaintiff then called Chris Knight at the Hopkinsville warehouse to discuss the situation.  Plaintiff was finally able to release the break with his foot.

25.     On May 12, 2010, the forklift break was again left so tight that the Plaintiff was unable to release it.  The Plaintiff asked Justin Behn to help him release it.

26.     On May 13, 2010, at quitting time, all employees were gone expect for Brandon Bond and the Plaintiff.  As they were driving out, James Dossett and Phillip Adler, were sitting in their vehicles at the gate blocking the exit.  After some time, Dossett exited his vehicle and began to talk to Phillip Adler.  This blocked the Plaintiff from leaving.  The Plaintiff sat there for a few minutes.  The Plaintiff finally decided to call Mark Wilkins to let him know what the situation was and to tell him that he felt threatened and was considering calling the sheriff's office.  Dossett then returned to his vehicle and just sat there continuing to keep the exit blocked.  He then very slowly started moving forward until everyone (Adler, the Plaintiff and Brandon Bond) were able to leave.

27.     Pennyrile has a policy that the employees should be assigned to their closest office.  The Plaintiff was assigned to the Russellville office.  He worked at the Russellville location until May 20, 2011, at which time he was placed at the Hopkinsville office which is nearly a one hour commute from his home in Russellville, Kentucky.

28.     On July 19, 2011, the Plaintiff's attorney, Jay Joines, wrote to the attorney for Pennyrile, Lee Harton and asked why the Plaintiff was not being assigned to the Hopkinsville location.

29.     Later, the Plaintiff was assigned to the Cadiz office which is an even further commute for the Plaintiff at nearly one and one-half hours.

30.     The Plaintiff was terminated on September 16, 2011.

31.     The Plaintiff states that he has been discriminated against, harassed and retaliated against because of his disability.

32.     The Plaintiff has lost his employment and therefore suffered lost wages and a loss of benefits, specifically as it would pertain to health insurance coverage for his

now existing medical condition which would be considered pre-existing health condition under any health insurance policy.  The Plaintiff has also lost other benefits including retirement and mandatory contributions.

33.    The Plaintiff has suffered humiliation and mental pain and suffering as a result of his termination.

## V.    <u>CLAIMS FOR RELIEF</u>

### <u>COUNT I</u>

### <u>VIOLATION OF THE AMERICANS WITH DISABILITIES ACT</u>

34.    The Plaintiff hereby incorporates paragraphs 1-33 and states that the above facts constitute the tort of wrongful termination.

35.    By its conduct as set forth before, Defendant has engaged in unlawful employment practices in violation of the ADA and the Kentucky Civil Rights Act, KRS 344.010.  These practices included, without limitation, refusing to provide the Plaintiff with reasonable accommodation for his disability, retaliating against him for seeking reasonable accommodations, treating him in a hostile manner, ridiculing and mocking him, and terminating his employment as a result of his disability and/or perceived disability.

36.    These unlawful practices were intentional on the part of Defendant and its management.

37.    These practices have caused the Plaintiff damages, deprived Plaintiff of equal employment opportunities and adversely affected Plaintiff because of his disability.

## COUNT II

## WRONGFUL TERMINATION

38.     The Plaintiff hereby incorporates paragraphs 1-37, by reference as if fully set forth herein.

39.     The Defendant led the Plaintiff to believe that he had secure employment through its actions, its handbook and its treatment of other employees.

40.     The termination of the Plaintiff was wrongful, was against the practice and policy of the Defendant.

41.     As a result, the Plaintiff has suffered damages.

## COUNT III

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

42.     Defendant's failure to act to remedy such conduct so extreme and outrageous caused the Plaintiff to suffer severe emotional distress.

43.     Such conduct of the Defendant and the failure to act to remedy such conduct, was at all times intentional and/or reckless without regard to the Plaintiff's rights.

44.     As a result therein, the Plaintiff had suffered damages.

## PRAYER OF RELIEF

WHEREFORE, the Plaintiff respectfully request the following relief:

1.     That this Court assume jurisdiction over this action;

2.     Trial by jury;

3.     That this Court order the Defendant to reinstate the Plaintiff at the salary level that the Plaintiff would have reached, after the Defendant's discriminatory treatment, or alternately award front pay and benefits to the Plaintiff;

4.     Judgment in favor of the Plaintiff for back payment, loss of future wages, impairment of income, and for value of lost employment benefits as may be found by the jury;

5.     Judgment in favor of the Plaintiff for compensatory damages in the amount of $750,000.00;

6.     Judgment in favor of the Plaintiff for punitive damages in the amount of $750,000.00;

7.     An award of reasonable attorney's fees and costs;

8.     Any other and such further relief as the Court may deem just, equitable and proper.

DATED this ___2nd___ day of ___November___, 2012.


s/ PAMELA C. BRATCHER
_____
PAMELA C. BRATCHER
P. O. Box 130
Bowling Green, Kentucky 42102
270/783-8311
270/783-8522 Fax
pamela@pamelabratcher.com

## VERIFICATION

This is to verify that I have read the foregoing statements contained in the Verified Complaint and that they are true and correct to the best of my knowledge and belief.

BOBBY MOSS

**STATE OF KENTUCKY** )
                            :ss
**COUNTY OF WARREN** )

SUBSCRIBED AND SWORN TO before me this _30th_ day of _October_, 2012, by Bobby Moss.

NOTARY PUBLIC
Kentucky State at Large
My Commission Expires: _May 7, 2016_